## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **HUGO NEU CORPORATION,** | **Case No. 17–cv–00373–MCA–ESK** |
| **Plaintiff,** | |
| v. | **OPINION** |
| **FREEMAN FAMILY LLC,** | |
| **Defendant.** | |

**Kiel, U.S.M.J.**

**THIS MATTER** comes before the Court on a Motion to Dismiss the entire action (Motion) pursuant to Federal Rule of Civil Procedure (Rule) 12(b)(1) by plaintiff Hugo Neu Corporation (HNC).   (ECF No. 93.)   Defendant Freeman Family LLC (FFL) opposes the Motion.   (ECF No. 95.)   HNC filed a reply to FFL's opposition.   (ECF No. 96.)   For the following reasons, the Motion is **GRANTED**.[1]

## BACKGROUND

### I.   THE AGREEMENT

In May 2008, HNC, FFL, and several non-parties entered into an operating agreement (Agreement), which granted a 5% interest in Park Avenue Landing LLC (Company) to FFL.   (ECF No. 1 ¶¶ 14–15.)   The relevant Agreement provisions are set forth below.

####   A.   Profits Interest

As provided in Section 18 of the Agreement, titled *Profits Interest*, FFL agreed: (1) to facilitate the acquisition of property that is adjacent (Adjacent Property) to the

---

[1] The parties filed a notice, consent, and reference of a dispositive motion to a Magistrate Judge.   (ECF Nos. 94, 97.)

Company's property in order to combine them into a larger parcel (the parties referring to the potentially larger parcel as Parcel 17); (2) to cause Parcel 17 to be entitled for residential development; (3) to cause the Company to be designated as the approved developer of Parcel 17; and (4) to enter into an agreement with a real estate developer on the Company's behalf to redevelop Parcel 17.   (ECF No. 93–3 p. 16 ¶ 18(b).)[2]

Upon the Company's written request, after the acquisition of the Adjacent Property and the designation of the Company as the developer of Parcel 17, FFL promised to provide to the Company an Initial Capital Contribution of $340,000. (ECF No. 93–3 pp. 16–17.)   Under Section 18(c), moreover, once the Company and a real estate developer enter into a development agreement, FFL would owe the kind of services to the Company that "would be provided by an interested investor who monitors its investment in a business or venture."   (ECF No. 93–3 p. 17 ¶ 18(c).)

B.   Call Right

Section 19 of the Agreement, titled *Call Right*, grants HNC the right to purchase FFL's interest in the Company for a nominal amount if the Company, by December 31, 2008: (1) had not acquired the Adjacent Property; or (2) was not designated as the approved developer of Parcel 17 in its entirety.   (ECF No. 93–3 p. 17 ¶ 19.)   Further, HNC retained the right to purchase FFL's interest if, by October 31, 2010, FFL failed to cause the Company to enter into an agreement with a real estate developer to develop Parcel 17.   (*Id.*)

C.   Distributions

Section 10(e) of the Agreement, titled *Distributions*, provides that any distributions due to FFL from the Company would be reduced by any amount over $250,000 that the Company spent in brokerage fees to complete the acquisition of the Adjacent Property or to identify real estate developers for Parcel 17, subject to FFL's

---

[2]  Because HNC submitted several separate exhibits under ECF No. 93–3, the Court refers to the page numbers assigned by the Court's Electronic Case Filing System on the upper-righthand corner of the submissions under ECF No. 93–3 throughout this Opinion for ease of reference.

consent, which it could not unreasonably withhold.   (ECF No. 93–3 pp. 11–12 ¶ 10(e).)

                D.     <u>Indemnification</u>

Section 14 of the Agreement, titled *Indemnification*, requires FFL to be indemnified for legal expenses that it incurs if it becomes involved in any litigation concerning the Company.   (ECF No. 93–3 p. 13 ¶ 14.)

## II.    THE INITIAL DISPUTE

As of November 2016, the acquisition of the Adjacent Property had not occurred and the Company had not reached an agreement with a developer.   (ECF No. 1 ¶¶ 25–26.)   As a result, HNC never requested the Initial Capital Contribution from FFL.   (ECF No. 8 p. 11 ¶ 10.)   Furthermore, on or about November 7, 2016, HNC informed FFL that it intended to exercise its call rights under Section 19 of the Agreement to purchase FFL's interest in the Company for a nominal amount.   (ECF No. 1 ¶ 28.)   FFL disputed whether HNC could indeed exercise the call rights and refused to sell its interest in the Company to HNC.   (ECF No. 1 ¶¶ 29–30.)

                A.     <u>This Lawsuit</u>

In January 2017, HNC filed the complaint against FFL in this case: (1) alleging that FFL breached the Agreement; and (2) seeking a judgment declaring that HNC properly exercised its call rights and that FFL was required to sell its interest in the Company to HNC.   (ECF No. 1 ¶¶ 40–57.)   FFL filed an answer denying HNC's allegations, as well as a counterclaim for a judgment declaring that: (1) FFL is not in breach of the Agreement; (2) HNC did not properly exercise its call rights; and (3) FFL was not required to sell its interest in the Company to HNC.   (ECF No. 8.)

In February 2019, the Court denied HNC's Motion for Summary Judgment. The Court determined there were factual issues concerning whether HNC waived its call rights.   (ECF No. 63.)

                B.     <u>Delaware Action</u>

In April 2019, in a separate action between FFL and the Company, the Delaware Court of Chancery awarded to FFL an advance from the Company of all

legal fees associated with this litigation pursuant to the indemnification provision of the Agreement.   (ECF No. 95–7.)   Through April 2020, the Company has advanced over $900,000 to FFL for legal fees.   (ECF No. 93–1 pp. 1, 5.)

## III.   THE PRESENT MOTION

Following the Delaware Court's decision, HNC decided it no longer wished to pursue this litigation.   (ECF No. 93–1 p. 5.)   In March 2020, after unsuccessful settlement discussions, HNC wrote a letter to FFL in which it "expressly, unconditionally, and irrevocably waive[d] any rights it has to acquire FFL's Membership Interest pursuant to the provisions of Section 19 of the … Agreement." (ECF No. 93–3 p. 29.)

HNC now moves under Rule 12(b)(1), arguing that its waiver resolved the only remaining live issue in the case, thereby rendering the case moot and resulting in the Court's lack of subject matter jurisdiction.   (ECF No. 93–1.)   FFL concedes that the issues relating to the call rights are resolved.   (ECF No. 95 p. 18.)   However, FFL argues in opposition that HNC's waiver has brought to the fore new live issues of contract interpretation, and thus the Court should reach the merits of FFL's counterclaims even if the Court finds HNC's claims to be moot.   (ECF No. 95 pp. 19–26 (arguing that Rule 41(a)(2) limits HNC's ability to voluntarily dismiss the action at this late juncture, and that HNC should be barred from engaging in the voluntary cessation of its claims by temporarily ending its efforts to deprive FFL of its interests to avoid an adverse ruling now).)   In reply, HNC argues that none of the disputes FFL now raises are live disputes, and the exceptions to mootness raised by FFL do not apply to this case.   (ECF No. 96 pp. 2–9.)

## DISCUSSION AND ANALYSIS

## I.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

The Third Circuit Court of Appeals recently recited the standard for resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1):

> A facial attack challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true, whereas a factual attack challenges the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or otherwise presenting competing facts. On a factual attack, the plaintiff bears the burden to prove that jurisdiction exists, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.

*Manuel v. NRA Grp. LLC*, 722 F. App'x 141, 145 (3d Cir. 2018) (citing *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016)) (internal quotation marks, citations, and alterations omitted).

### B.   Subject Matter Jurisdiction

For a federal court to reach the merits of a case, Article III of the Constitution requires that there is an actual "case" or "controversy" between adverse parties. U.S. CONST. art. III, § 2, cl. 1.  If at any time during the litigation no case or controversy exists, the case becomes moot.  *See Steffel v. Thompson*, 415 U.S. 452, 459 n.10 (1974) ("The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed."); *see also Powell v. McCormack*, 395 U.S. 486, 496 (1969) ("Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.").  When a case becomes moot, a federal court no longer has subject matter jurisdiction over the case.  *See Powell*, 395 U.S. at 512–13.

A party may raise the issue of subject matter jurisdiction at any time. Fed.R.Civ.P. 12(b)(1).  The court must dismiss the case if it lacks subject matter jurisdiction.  *Id.*  "Where a district court lacks subject matter jurisdiction, its 'disposition of such a case will … be *without* prejudice.'"  *Siravo v. Crown, Cork & Seal Co.*, 256 F. App'x 577, 580–81 (3d Cir. 2007) (quoting *In re Orthopedic "Bone Screw" Prods. Liab. Litig.*, 132 F.3d 152, 155 (3d Cir. 1997)).

### C.   Rule 41(a)(2)

A plaintiff may request a court to dismiss a case on terms that the court considers proper.  Fed.R.Civ.P. 41(a)(2).  However, "[i]f a defendant has pleaded a

counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication." *Id.* The court has broad discretion whether to grant a plaintiff's motion for voluntary dismissal. *Shamrock Creek LLC v. Borough of Paramus*, 683 F. App'x. 142, 144 (3d Cir. 2017). Before considering a motion for voluntary dismissal, the court must first resolve any issues of subject matter jurisdiction:

> [W]hen there is reason for a court to believe that it does not have subject matter jurisdiction, as is the case when there is an outstanding motion to dismiss on those grounds, the district court must address this motion before it may rule on a subsequent motion for voluntary dismissal pursuant to Fed. R. Civ. P. 41(a)(2).

*Shortt v. Richlands Mall Assocs., Inc.*, No. 90–02056, 1990 WL 207354, at *4 (4th Cir. Dec. 19, 1990).

### D.   Voluntary Cessation Doctrine

Separately, a party's promise to cease the allegedly illegal or wrongful behavior does not automatically moot the litigation. *See City* of *Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982) ("It is well settled that a [party's] voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."). The court should not permit a wrongdoer to "engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). The party ceasing its wrongful conduct bears a heavy burden to show that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (quoting *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)).

Further, voluntary cessation of wrongful behavior does not moot a case if a party voluntarily ceases that behavior just to continue the same behavior, but in a new form. *See Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 217 (3d Cir. 2005) (the defendant's voluntary cessation of its infringement of the plaintiff's

6

trademark on defendant's website did not moot the case because infringement continued on defendant's website with different language).

## II.   HNC'S UNCONDITIONAL AND IRREVOCABLE WAIVER OF ITS CALL RIGHTS RENDERS THIS MATTER MOOT

FFL concedes that "HNC has given up its right to buy [FFL's] interest under Section 19, resolving one issue in this litigation … ."   (ECF No. 95 p. 18.)   Thus, the parties agree that the call rights under Section 19 are no longer a live issue.   (*See id.*; *see also* ECF No. 93–1.)   However, FFL argues that HNC's waiver of its call rights raises new issues about the meaning of the following provisions of the Agreement: (i) Section 18(b) involving future services FFL owes to the Company; (ii) Section 18(b) involving the timing of FFL's Initial Capital Contribution; and (iii) Section 10(e) involving the deduction of brokerage fees from distributions due to FFL from the Company.   (ECF No. 95 pp. 19–21.)   None of these purported issues can rescue this case from mootness.

### A.   Section 18(b), Future Services

Section 18(b) of the Agreement requires FFL to provide the following future services: (i) acquiring the Adjacent Property; (ii) causing Parcel 17 to be "Entitled" for residential development and the Company to be "Designated" as the developer; and (iii) finding and entering into an agreement with a real estate developer to develop Parcel 17.   (ECF No. 93–3 p. 16 ¶ 18(b).)   If FFL fails to achieve these goals, HNC could exercise its call rights to acquire FFL's interest in the Company.   (ECF No. 93–3 p. 17 ¶ 19.)

All that has changed as to the parties' rights and obligations under the Agreement is HNC's unconditional and irrevocable waiver of its call rights.   HNC's waiver has no effect on FFL's obligation to perform future services under Section 18(b).   The call right under Section 19 was the "stick" that threatened FFL with severe consequences if FFL failed to provide the future services.   FFL's obligations under Section 18(b), however, remain unchanged.   FFL's claim that there may be

differing interpretations is not a live issue; it cannot resurrect the litigation from mootness.

In any event, the question of whether FFL must perform these future services is not ripe.   HNC has neither sought to compel FFL to perform these services nor asked FFL for these service for many years.   (ECF No. 95 p. 19.)

### B.   Section 18(b), Initial Capital Contribution

Section 18(b) of the Agreement requires FFL to make an Initial Capital Contribution of $340,000 upon the satisfaction of certain conditions and the Company's written request.   (ECF No. 93–3 p. 16 ¶ 18(b).)   Those conditions are that: (1) the Company acquire the Adjacent Property; (2) the Company is designated as the developer of Parcel 17; and (3) residential development is permitted on Parcel 17.   (ECF No. 93–3 p. 17 ¶ 19.)   If FFL fails to make the capital contribution within 10 business days of receipt of the Company's written request, FFL forfeits its interest in the Company.   (ECF No. 93–3 p. 16 ¶ 18(b).)   FFL's obligation to make the capital contribution existed at the formation of the Agreement and did not change as a result of HNC's waiver of its call rights.   Whether HNC maintains its call rights under Section 19 does not affect the conditions that must be met to require FFL's capital contribution.

After HNC's waiver of its call rights, FFL asked HNC to agree to an additional condition — that development of Parcel 17 be ready to begin — before FFL is required to make the capital contribution.   (ECF No. 95 pp. 19–20; ECF No. 96 pp. 7–8.) Whether or not the request is reasonable is not a live issue in this matter.   The requested additional term is beyond what the parties bargained for in May 2008. FFL's proposal is simply not "consistent with the parties' original bargain under the Operating Agreement," as FFL claims.   (ECF No. 95 p. 20.)

### C.   Section 10(e), Brokerage Fees

Under Section 10(e) of the Agreement, the Company can reduce any distributions to be paid to FFL by the amount in excess of $250,000 that the Company paid in brokerage fees to acquire the Adjacent Property and to enter into an agreement with a developer.   FFL has "veto power" if the Company intends to spend

more than $250,000 for brokerage services.   (ECF No. 93–3 pp. 11–12 ¶ 10(e).)   As with the other provisions that FFL claims are now unclear, this provision remains unchanged by HNC's waiver of its call rights.   There continues to be "no ceiling" on how much can be deducted from distributions to be paid to FFL.   (ECF No. 95 p. 20.) FFL's "veto power" remains intact.   (ECF No. 95 pp. 20–21.)   Whether FFL plays a role in transactions that garner such brokerage fees is irrelevant to this provision of the Agreement.

Thus, none of the purported issues relating to the meaning of other provisions of the Agreement prevents the dismissal of this entire matter.

### III.   THE PURPORTED EXCEPTIONS TO MOOTNESS DO NOT APPLY

FFL presents two exceptions to mootness as a backstop to the Court's dismissal of the action for lack of subject matter jurisdiction: voluntary dismissal under Rule 41(a)(2) and the voluntary cessation doctrine.   (ECF No. 95 pp. 22–26.)   Neither exception applies here.

#### A.   HNC Has Not Moved For Voluntary Dismissal Under Rule 41(a)(2)

HNC has not moved for voluntary dismissal under Rule 41(a)(2), and the Court will not *sua sponte* convert the Motion, which is based on a lack of subject matter jurisdiction under Rule 12(b)(1), to a motion for voluntary dismissal.   (*See* ECF No. 93–1.)   As discussed above, there is good reason for the Court to believe it may lack subject matter jurisdiction.   Consequently, the Court must first resolve whether it has jurisdiction before it can consider a motion for voluntary dismissal.   *See Shortt*, 1990 WL 207354, at *4.   Because the Court has determined it lacks subject matter jurisdiction, following HNC's waiver of its call rights, the Court will dismiss the action, and must do so before considering any possible motions for voluntary dismissal under Rule 41(a)(2).   *Shortt*, 1990 WL 207354, at *4 (citing *In re Fed. Election Campaign Act Litig.*, 474 F.Supp. 1051 (D.D.C. 1979); *Watson v. Clark*, 716 F.Supp. 1354 (D. Nev. 1989)).

Under Rule 41(a)(2), "[i]f a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication."   Here, FFL has pleaded a counterclaim before being served with HNC's Motion.   But even if HNC had filed for voluntary dismissal under Rule 41(a)(2), FFL's "mirror-image" counterclaims would not survive for independent adjudication for the very same reason that the Court is required to dismiss HNC's claims for lack of subject matter jurisdiction due to mootness.   *See SL Waber, Inc. v. Am. Power Conversion Corp.*, 135 F.Supp.2d 521, 525 (D.N.J. 1999).

B.   The Voluntary Cessation Doctrine Does Not
Prevent Mootness

FFL claims HNC's attempt to exercise its call rights was wrongful.   HNC has unconditionally and irrevocably waived its call rights.   Having voluntarily ceased the allegedly wrongful conduct, HNC now bears the burden to show that the conduct could not reasonably be expected to recur.   *Friends of the Earth, Inc.*, 528 U.S. at 189 (citing *Concentrated Phosphate Exp. Ass'n*, 393 U.S. at 203).   The voluntary cessation doctrine prevents dismissal for mootness "when 'the [party] voluntarily ceases an allegedly illegal practice but is free to resume it at any time.'"   *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (quoting *Chong v. Dist. Dir., INS*, 264 F.3d 378, 384 (3d Cir. 2001)).   It must be clear that, upon the resolution of the case, HNC is not "free to return to [its] old ways."   *See United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953).   HNC has satisfied its burden.   (ECF No. 93–3 p. 29.)   In its March 2020 letter to FFL, HNC "expressly, unconditionally, and irrevocably waive[d] any rights it has to acquire FFL's Membership Interest pursuant to the provisions of Section 19 of the … Agreement."   (*Id.*)

The United States Supreme Court addressed the voluntary cessation doctrine in *Already, LLC v. Nike, Inc.*, 568 U.S. 85 (2013).   There, Nike, Inc. (Nike) sued Already, LLC (ALLC) for alleged violations of Nike's trademark.   *Id.* at 88.   ALLC denied the allegations and filed a counterclaim challenging the validity of Nike's mark.   *Id.*   Thereafter, in an effort to moot the case, Nike issued a covenant not to

sue and promised not to raise claims against ALLC based on ALLC's existing designs. *Id.* at 88–89. Nike moved to dismiss its own claims, with prejudice, and ALLC's counterclaims, without prejudice, for lack of subject matter jurisdiction under Rule 12(b)(1). *Id.* at 89. The Supreme Court affirmed the lower court's dismissal of Nike's claims and ALLC's counterclaims because the Court lacked subject matter jurisdiction. *Id.* at 102. The Court reasoned that "[t]he breadth of this covenant [not to sue] suffices to meet the burden imposed by the voluntary cessation test" because "[t]he covenant is unconditional and irrevocable." *Id.* at 93. The Court concluded that "the case is moot because the challenged conduct cannot reasonably be expected to recur." *Id.* at 95.

The result should be no different here. Just as Nike unconditionally and irrevocably covenanted not to sue, HNC "expressly, unconditionally, and irrevocably waive[d]" its call rights. *Id.* at 89. (*See* ECF No. 93–3 p. 29.) Given the unconditional and irrevocable waiver, HNC cannot successfully attempt to exercise its call rights in the future and revert to its "old ways." *See Already, LLC*, 568 U.S. at 95.

FFL is allegedly concerned that HNC might turn to "loopholes [in the Agreement] left by the half-finished business now before the Court after more than two years of litigation." (ECF No. 95 p. 23.) FFL's concern is speculative and not ripe for adjudication. Conduct similar to that of exercising HNC's call rights has not continued in a new form. And in any case, "[o]nce [this] litigation is dismissed with prejudice, it cannot be resumed in this or any subsequent action." *Deakins v. Monaghan*, 484 U.S. 193, 200 n.4 (1988).

In that vein, this case is distinguishable from *Century 21 Real Estate Corporation v. Lendingtree, Inc.*, 425 F.3d 211 (3d Cir. 2005). There, the defendant voluntarily ceased the wrongful conduct, only to immediately replace that wrongful conduct with other conduct achieving the similarly wrongful ends. *Id.* at 216. A new form of wrongful behavior had actually occurred. *Id.* But here, HNC: (1) has voluntarily ceased its wrongful behavior; (2) has not replaced that wrongful conduct with similarly wrongful conduct; and (3) has not indicated that it intends to replace

11

that wrongful conduct with similarly wrongful conduct.   It cannot reasonably be expected that similarly wrongful behavior will recur.   *Friends of the Earth, Inc.*, 528 U.S. at 189.

## CONCLUSION

HNC's Motion to Dismiss under Rule 12(b)(1) (ECF No. 93) is granted.   FFL's counterclaim is dismissed without prejudice.   The Court will enter an appropriate order.


    */s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES MAGISTRATE JUDGE**

Date:  July 23, 2020